**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ANGELICE PERRY, Mother of          )
and Administratrix for             )
the Estate of KEVIN SELLARS,       )
deceased,                          )
                                   )
                Plaintiffs,        )
Vs.                                )    Civil Action No.
                                   )
FULTON COUNTY SCHOOL DISTRICT,     )
FULTON COUNTY BOARD OF EDUCATION,  )
AMY GAMBLE, PAULETTE ABBEY, JILL   )
ELLIS, ADRIANA ROEBUCK, BECKY      )
MOSCATELLO, DONNA PACKER,          )
(FIRST NAME UNKNOWN) TOUSANE       )
                                   )
                Defendants.        )
_____)

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### I.    INTRODUCTION

1.

This is a civil rights, wrongful death and survival action
brought on behalf of the Estate of Kevin B. Sellars, III,
(hereafter "Kevin"), by and through the Administratrix of the
Estate and his natural mother, Angelice Perry, and in her own
right. This action is brought under the Civil Rights Act of
1871, 42 U.S.C., Section 1983; the Individuals with Disabilities
Education Act (hereafter "IDEA"), 20 U.S.C. Section 1400, et
seq.; the Rehabilitation Act of 1973, 29 U.S.C. Section 794; the

Americans with Disabilities Act of 1990 (hereafter "ADA"), 42 U.S.C. Section 12101 and under Georgia's wrongful death and survival statues. This action is also brought for violations of the Plaintiffs' respective rights afforded under the United States Constitution, including but not necessarily limited to the Eleventh and Fourteenth Amendments to the Constitution of the United States.

2.

These claims are made against the Fulton County School District, its Board of Directors, the Principal of Woodland Charter Elementary School (Amy Gamble), the school nurse (Paulette Abbey), the school clinical assistant (Adrian Roebuck), the school's professional assistant (Adrian Roebuck), the school's physical education teacher (Becky Moscatello) and the school's paraprofessional (Donna Packer). Plaintiffs seek compensatory damages and punitive damages from Defendants for violation of the federal laws that protect the constitutional and statutory rights of individuals with disabilities to a free and appropriate public education, their right to be free from discrimination based upon a child's or persons disability, and the child's or persons constitutionally guaranteed right to life and to due process and Georgia's law.

3.

The IDEA requires all states and school districts to "identify, locate and evaluate" all children with disabilities, and to provide these children with special education services, including specialized instruction and related services. Children and persons with asthma, food allergies, breathing problems, or other physical problems are among those who qualify for either special education under IDEA or reasonable accommodations under Section 504 of the Rehabilitation Act of 1973 (hereafter "Section 504").

4.

In connection therewith, Kevin was acknowledged and identified as a disabled child and or person within the meaning of the statutory provisions. Kevin suffered from a chronic and severe asthmatic condition and severe food allergies, his condition was known by the Defendants.

## II. JURISDICTION

5.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343. Plaintiffs' cause of action arises under 20 U.S.C. Section 1400, et seq., as amended; 29 U.S.C. Section 794; 42 U.S.C. Section 12101, et seq.; and 42 U.S.C. Section 1983 as these claims are Federal questions of law. The State actions also come under the

jurisdiction of this Court. Venue in the Northern District of Georgia is proper under 28 U.S.C. Section 1391(b) because Plaintiffs reside in Fulton County where the District and its school are located and Fulton County is where the violations of law occurred, therefore venue is proper in this Court both under the Federal claims and State claims.

### III. PARTIES

6.

Kevin B. Sellars, III, hereinafter referred to as ("Kevin") was born on March 6, 2004. At all times relevant hereto, Kevin was a student at Woodland Charter Elementary School within the Fulton County School District.

7.

Angelice Perry, hereinafter referred to as ("Ms. Perry") is Kevin's natural mother and served as his primary physical and legal guardian. Ms. Perry is also the Administratrix of the Estate of Kevin B. Sellars, III. She and Kevin at all times relevant hereto resided in Sandy Springs, Georgia, within the area served by the Fulton County School District.

8.

Fulton County School District, hereinafter referred to as ("District") is a local educational agency as defined within the meaning and language of the IDEA. Defendant District, as a

recipient of the federal funds under IDEA and other programs of federal financial assistance, is prohibited from discriminating against individuals with disabilities. The Defendant District is responsible for affirmatively making reasonable accommodations and providing benefits to students with disabilities that are as effective as those provided to non-disabled students, including but not limited to related medical services.

9.

The Fulton County School Board (hereafter the "Board") consists of duly elected directors of the District. The Board is responsible for all policies of the District. The Defendant Board, as a recipient of the federal funds under IDEA and other programs of federal financial assistance, is prohibited from discriminating against individuals with disabilities. The Defendant Board is responsible for affirmatively making reasonable accommodations and providing benefits to students with disabilities that are as effective as those provided to non-disabled students, including but not limited to related medical services.

10.

Defendant Amy Gamble (hereafter "Gamble") was employed by Defendant District and Board as Principal of the Woodland Charter Elementary School at all times relevant hereto.

11.

At all times relevant Defendant Gamble was an agent and/or employee of the Board and District performing duties in the regular course of business.

12.

Defendant Paulette Abbey (hereafter "Abbey") was employed by Defendant District and/or Board as a school nurse for the Fulton County School District at all times relevant hereto.

13.

At all times relevant, Defendant Abbey was an agent and/or employee of the Board and/or District performing duties in the regular course of business.

14.

Defendant Jill Ellis (hereafter "Ellis") was employed by Defendant District and/or Board as a professional assistant at Woodland Elementary Charter School at all times relevant hereto.

15.

At all times relevant, Defendant Ellis was an agent and/or employee of the Board and/or District performing duties in the regular course of her agency or employment.

16.

Defendant Adriana Roebuck (hereafter "Roebuck") was employed and/or an agent of the District and/or Board as a

clinical assistant for the Woodland Charter Elementary school at
all time relevant hereto.

17.

At all times, relevant Defendant Roebuck was an agent
and/or employee of the Board and/or District performing duties
in the regular course of her agency or employment.

18.

Defendant Becky Moscatello (hereafter "Moscatello") was
employed and/or an agent of the District and/or Board as a
physical education teacher for the Woodland Charter Elementary
school at all·time relevant hereto.

19.

At all times relevant Defendant Moscatello was an agent
and/or employee of the Board and/or District performing duties
in the regular course of her agency or employment.

20.

Defendant Donna Packer (hereafter "Packer") was employed
and/or an agent of the District and/or Board as a
paraprofessional for the Woodland Charter Elementary school at
all time relevant hereto.

21.

At all times relevant Defendant Packer was an agent and/or
employee of the Board and/or District performing duties in the
regular course of her agency and/or employment.

22.

All individual defendants are sued in their personal capacity and as agents and/or employees of the District and/or Board. Actions and/or omissions of the individual defendants in their official capacities are included in the claims against the District and the Board.

## IV.  LEGAL BACKGROUND

23.

Under IDEA and relevant implementing regulations, each state and each local educational agency (such as the District and the Board) within a state, are required to identify, locate, and evaluate every child with a disability.

24.

"Disabilities," as defined by IDEA, include not only enumerated specific learning disabilities, but also includes various mental, emotional, and physical impairments. Asthma, other breathing problems and food allergies are examples of recognized disabilities within the gambit of IDEA.

25.

IDEA further requires that states and local education agencies, such as the District and the Board ensure that each

child with disabilities is provided a Free Appropriate Public Education (hereafter "FAPE"). A FAPE consists of special education and related services designed to meet the child's unique needs.

26.

The obligation of school districts, its Board and the state to identify and provide appropriate educational services to children with disabilities also arises in connection with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794 ("Section 504"), and the regulations promulgated thereunder.

27.

Section 504 bars all federally funded entities, including but not limited to school districts and their boards that receive federal funds, from discriminating on the basis of disability.

28.

Similarly, the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," as set forth in 42 U.S.C. Section 12132.

29.

The Fourteenth Amendment to the United States Constitution forbids a state from depriving any person of life, liberty, or property without due process of law. Protected interests in property are normally not created by the United States Constitution, but rather are created and defined by an independent source (e.g. federal or state statute).

30.

The laws of Georgia as defined by its statutes allows for the recovery for the estate of a person who suffered a wrongful death and a cause of action for the survivor of the deceased.

## V.   **FACTS**

31.

In August of 2009, Kevin enrolled at Woodland Charter Elementary School, a Fulton County School, within the State of Georgia.  At all times relevant hereto, Kevin was identified, recognized, and known to be a student with disabilities (i.e. asthma and/or related breathing problems and severe food allergies) within the meaning of the statutory provisions and attendant regulations.

32.

In connection therewith, the Defendants participated in the development of a Section 504 Accommodation Plan addressing

issues pertinent to Kevin's disabilities.

33.

The District and Board by and through their agents and employees arranged for an Asthma Action and Allergy Plan. The Asthma Management Plan to be instituted, thereby afforded Kevin related services to address his asthmatic and severe food allergy condition (disabilities) while in school; thereby purporting to provide Kevin with the essential and necessary services affording him a FAPE pursuant to the statutory Framework and pertinent regulations.

34.

The Asthma Action, Allergy Plan and an attendant Asthma Management Plan document provided among other things that an Epipen must be available at all times, and if Kevin developed sudden shortness of breath, he must be given an Epipen injection after necessary treatment and a 911 call must be made.

35.

In furtherance of the fore mentioned plans, Ms. Perry provided an inhaler and an Epipen to Kevin and trusted that the District and Boards' employees were properly trained and would follow the Allergy Plan and Asthma Management Plan.

36.

Ms. Perry had inquired with school officials about the

possibility of having the school purchase a nebulizer and an Epipen to be maintained at the school for use in the event a situation arose.

37.

The District and/or Board refused to purchase and/or to acquire a nebulizer or Epipen following Ms. Perry's reasonable request.

38.

The aforementioned Asthma Action and Allergy Plan also detailed actions to be taken if symptoms occurred. In the event that Kevin's symptoms increased in severity, or if there was an absence of breathing pulse or decreased consciousness, emergency personnel were to be contacted and CPR was to be performed.

39.

The District and/or Board was provided with all necessary documentation from Kevin's parent and physician to facilitate the medical aspects of the Section 504 Accommodation Plan, its Asthma Action and Allergy Plan.

40.

The District, Board and all other Defendants were aware of Kevin's disabilities, and were aware of the severe consequences that could arise if the symptoms were not properly monitored and treated.

41.

The Defendants were well aware of the extent of Kevin's medical conditions. On at least two previous occasions, prior to Kevin's death, emergency medical services and fire personnel responded to Woodland Charter Elementary School to treat Kevin for acute asthma attacks.

42.

Following gym class on August 19, 2014, Kevin was observed by school personnel, sneezing and rubbing his eyes and complained to his teacher that he was having difficulty breathing.

43.

Defendant Paulette Abbey, the school nurse, was not in the building at the time. Nor was she contacted when Kevin began complaining of his medical issues. In addition, Ms. Perry was not contacted as to her son's condition.

44.

Defendant Gamble was not monitoring Kevin after his complaints and continued to be engaged with the other children in scheduled activities.

45.

After being advised of Kevin's condition Defendant Gamble abandoned Kevin leaving him in the care of her untrained

subordinates.

46.

Kevin's breathing became more labored and as he began gasping for air. Packer was directed by Gamble to get a wheelchair and escort Kevin to the school clinic.

47.

By the time Kevin was escorted to the clinic he was turning blue and had stopped breathing. At no time did the Defendants or any school or staff member administer any medication or assistance.

48.

Not until the point that Kevin was unresponsive turning blue, and stopped breathing was Ms. Perry contacted by school personnel and was questioned whether the school should call 911. Ms. Perry adamantly advised that the school immediately call paramedics) Thereafter, school personnel called 911 and emergency personnel were dispatched to the school.

49.

The 911 dispatcher attempted to instruct the untrained school staffers on how to operate the AED machine. Roebuck, the Clinic Assistant and Ellis were monitoring Kevin and communicating with 911. Although it has been asserted by school officials that CPR was being performed the 911 call transcript

does not document that any resuscitative efforts were employed.

50.

Ms. Perry was not informed of the severity of the situation when she was contacted by school personnel. Prior to her arrival at the school, she believed that Kevin simply had a non-life threating episode and she needed to come.

51.

Ms. Perry arrived at the school prior to the first medic team and found Kevin unresponsive, blue, and not breathing. She took an Epipen out of her purse and was about to administer to Kevin when Defendant Ellis slapped it out her hand.

52.

First responders then entered the clinic and resuscitative efforts were initiated for the first time.

53.

Fire and rescue personnel started CPR with chest compressions and immediately administered a first round of EPI.

54.

Kevin was then transported to Children's Healthcare of Atlanta at Scottish Rite. A second and third round of EPI were given to Kevin in route to the hospital.

55.

Kevin died on August 19, 2014, at 3:26 PM. An autopsy was performed and the Medical Examiner opined that the cause of death was asthma.

56.

Despite Kevin's declining condition no reasonable resuscitative efforts or treatments were ever administered by the Defendants prior to the arrival of emergency responders.

57.

The Defendants failed in satisfying their most basic obligations pursuant to the above-indicated statutory framework and attendant regulations. And the Defendants failed to follow their own 504 Accommodation Plan. The Defendants failure to administer resuscitative efforts contributed and/or caused Kevin's death.

58.

The Defendants inaction constitutes gross negligence on their part.

59.

Despite ample notice to the District and staff that complaints of symptoms can have serious consequences to Kevin, the Defendants ignored Kevin's cry for help on August 19, 2014. The Defendants failed to recognize and/or appreciate the significance and serious risks of same, and failed to administer

medication, notify appropriate personnel, or take any other appropriate action.

60.

Accordingly, the District and its personnel failed to adhere to the requirements of the Section 504 Accommodation/Service Plan, its Asthma Action and Allergy Plan, the Asthma Management Plan and/or take reasonable or appropriate actions to address the child's complaints and symptoms.

61.

Further, Ms. Perry was not notified of the child's complaints until he was unresponsive, turning blue, and not breathing. Nor was the school nurse contacted to address the situation.

62.

The Defendants failed to administer resuscitative efforts following the discovery of Kevin's condition.

63.

The Defendants' failures and omissions constitute reckless indifference and a callous disregard of Kevin's statutory and constitutional rights, this being more evident in light of the experiences of prior emergencies for the same type of event.

64.

Kevin being in fifth grade and just ten years old and in the care and custody of the Defendants, the Defendants had a duty to ensure the child's health, welfare and safety.

65.

The District and/or Board failed to adequately train personnel to recognize the onset of asthmatic and/or allergic symptoms and the potential serious risks associated with these conditions. The District and/or Board also failed to provide personnel adequately trained to perform resuscitative efforts, or failed to bring those skills to bear in light of the foreseeable circumstances.

66.

The Defendants developed and maintained policies, practices and/or customs which acquiesced in and caused the deprivation of Kevin's rights as herein indicated.

67.

The Defendants were aware or should have been aware of the practices, or should reasonably have been so aware, and validated those practices by failing to carry out their responsibilities to Kevin and his parent in violation of the IDEA, Section 504, the ADA and the United States Constitution.

68.

As a result of Defendants' actions and/or omissions, Kevin

incurred damage to his physical health directly resulting in his death. Ms. Perry has suffered great emotional stress, anxiety, depression and other injuries as a result of the loss of Kevin's love and companionship.

## VI.  CAUSES OF ACTION

### Count One - Violation of IDEA

69.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.

The Defendants had a duty to Kevin under IDEA, 20 U.S.C. Section 1400, et seq.

71.

The Defendants, by their actions and omissions, have deprived Kevin of his rights under IDEA, 20 U.S.C. Section 1400, et seq.

72.

The Defendant actions and omissions in failing to adhere to IDEA, 20 U.S.C. Section 1400, et seq. has damages the Plaintiffs.

### Count Two - Violation of Rehabilitation Act of 1973

73.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

74.

The Defendants had a duty to the Plaintiffs under the Rehabilitation Act of 1973, 29 U.S.C. Section 394, et seq..

75.

The Defendants, by their actions and omissions, have deprived Kevin of his rights under the Rehabilitation Act of 1973, 29 U.S.C. Section 394, et seq.

76.

The Defendants actions and omissions in violation of the Rehabilitation Act of 1973, 29 U.S.C. Section 394, et seq. have damaged the Plaintiffs.

## Count Three - Violation of ADA

77.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

77.

The Defendants had a duty to the Plaintiffs under the

Americans with Disabilities Act of 1990, 42 U.S.C. Section 1201, et seq.

78.

The Defendants, by their actions and omissions, have deprived Kevin of his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. Section 1201, et seq.

79.

The Defendants actions and omissions have damaged the Plaintiffs.

## Count Four - Violation of Civil Rights

80.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

81.

The Defendants owed a duty to the Plaintiffs under the Fourteenth Amendment to the United States Constitution, as codified in the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

82.

The Defendants, by their actions and omissions, have deprived Kevin of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution,

in violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

83.

The Defendants actions and/or omissions under Fourteenth Amendment to the United States Constitution, as codified in the Civil Rights Act of 1871, 42 U.S.C. Section 1983. Have damaged Kevin.

## Count V - Violation of Civil Rights

84.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

85.

The Defendants owed a duty to Plaintiff Ms. Perry under the Fourteen Amendment to the United States Constitution as codified in the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

86.

The Defendants, by their actions and omissions, have deprived Ms. Perry of her right to due process of law as guaranteed by the Fourteen Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

87.

The Defendants, by their actions and omissions have damaged Plaintiff Ms. Perry.

## Count Seven - Wrongful Death Action

88.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

89.

The Defendants had a duty to provide for the safety and wellbeing of Kevin.

90.

The Defendant breached their duty to Kevin in failing to provide for his safety and wellbeing.

91.

Defendants, by their actions and omissions, caused Kevin's death and are liable for appropriate damages pursuant to Georgia's Wrongful Death statute.

## Count Eight - Survival Action

92.

Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

93.

The Defendants had a duty to provide for the safety and wellbeing of Kevin.

94.

The Defendant breached their duty to Kevin in failing to provide for his safety and wellbeing.

95.

Defendants, by their actions and omissions, caused Kevin's death and are liable for appropriate damages pursuant to Georgia's Survival statute.

## VII. REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, in her capacity as Administratrix of the Estate of Kevin B. Sellars, III, and in her own right, requests that this Honorable Court grant the following relief:

a.    Enter a judgement that Defendants violated the child's rights under the IDEA, Section 504, the ADA and Section 1983;

b.    Enter judgement that Defendants violated Ms. Perry's individual rights under Section 1983;

c.    Enter judgement that Defendants are liable to the child's estate for damages pursuant to Georgia's Wrongful Death and Survival statutes;

d.   Award  compensatory  damages  in  excess  of  $75,000  and punitive  damages  against  the  Defendants  only  where  allowable  by law;

e.   Award  Plaintiff(s)'  costs,  attorneys'  fees,  expert witness fees, pre-judgment and post-judgment interest;

f.   Trial by twelve member jury; and

g.   Award  such  other  relief  as  this  Honorable  Court  deems appropriate and deserving.

This  18th  day of July, 2016.

Respectfully submitted,

Max Richardson Jr., Esq.
Georgia Bar No. 604080
2024 Beaver Ruin Road
Norcross, GA  30071
Office  770-209-7999
Email: Attorneymax@aol.com